Thomas H. LACY, Appellant,

v.

SCHLUMBERGER WELL SERVICE, Travelers Insurance Company, and the Oklahoma Workers' Compensation Court, Appellees.

No. 72418.

Supreme Court of Oklahoma.

April 28, 1992.

Rehearing Denied Oct. 28, 1992.

Richard A. Bell, Norman, for appellant, Thomas H. Lacy.

John A. McCaleb, Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, for appellees Schlumberger Well Service and Travelers Ins. Co.

DOOLIN, Justice.

In this case, Thomas Lacy ("Claimant"), an employee, filed a claim in the Workers' Compensation Court ("trial court") alleging that his lungs and upper respiratory system had been injured by continuous exposure to chemicals during his almost thirteen years of employment. The employer, Schlumberger Well Service ("Employer"), denied that claimant had any job-related

injury or disability. At trial, employer offered several witnesses, a number of medical records, and the deposition testimony of M.B. Shook, M.D., to support its defense.

Dr. Shook is a board certified internal medical specialist who concluded that claimant's problems were due to asthma and were not caused by his job. At the time Dr. Shook's testimony was offered into evidence, the only objection made by claimant was: "Your Honor, we would object to the probative value of that document." The objection was overruled and subsequently the trial judge denied claimant's claim finding that he had not sustained an injury arising out of and in the course of employment.

Claimant appealed and the case was assigned to the Court of Appeals, Division 4. The Court of Appeals reversed the trial court's order after an extensive review of Dr. Shook's testimony and a letter from Dr. Shook to the Traveler's Insurance Company, which was admitted into evidence, detailing his examination of the claimant. The appellate court found that the evidence did not constitute competent evidence to support the trial court's order. Employer subsequently petitioned this Court for certiorari which was granted.

## I.

Employer asserts that the Court of Appeals did not have the power to declare the testimony of Dr. Shook incompetent because no objection was made to the competency of the evidence when it was offered at trial. Employer cites *Whitener v. South Central Solid Waste Authority*[1] in support of its argument. In that case, an employee claimed a job-related injury and,

as in the instant case, objected to the admission of the employer's medical evidence *solely for lack of probative value.* The Court of Appeals, in *Whitener,* held that the evidence was not competent and reversed the trial court's denial of compensation. On certiorari, we stated:

> The only issue to be addressed is whether the employer's medical report has probative value. Its admissibility or "competence" is not before us. This is so because the claimant waived his objection to the report when he did not contest that exhibit's admissibility at the time of its offer into evidence. Upon claimant's failure to object timely, the report stood admitted by force of rule 21, Rules of the Workers' Compensation Court.[2]

In the instant case also, the claimant objected to the employer's medical evidence solely for its lack of probative value. Thus, under *Whitener* the *only* issue to be addressed on appeal is whether the employer's medical report has probative value. *However,* the Court of Appeals' holding that the testimony was not competent evidence is not necessarily error. This results from loose usage of the term "competence" and its derivatives.

As we explained in *Whitener,* in the area of workers' compensation an objection to the "competency" of a medical report is directed to the exhibit's admissibility on hearsay or other legal grounds.[3] Alternatively, an objection to an exhibit's "probative value" is used to challenge the evidence for insufficiency as legal proof of (a) medical findings with respect to the presence or absence of compensable disability, or of (b) the compensable impairment's rating.[4] In other words, when evidence is

1. 773 P.2d 1248 (Okl.1989).

2. *Id.* at 1250. 85 O.S.1981, Ch. 4, App., Rule 21, provides in pertinent part: "An objection to medical testimony offered by verified or declared report, if on the grounds that (1) it is based on an inaccurate or incomplete history or is otherwise without probative value, or (2) it does not properly evaluate claimant's impairment or disability, as the case may be, in accordance with the Workers' Compensation Act, must be interposed at the same time it is offered into evidence. *Unless an objection is timely made, it shall be waived. Any legally inadmissible evidence that stands admitted without objection shall be regarded as admitted* as part of the proof in the case."

After the 1990 amendments to the workers' compensation rules the applicable rule is Rule 23 which provides the same principles. *See* 85 O.S. Supp. 1990, Ch. 4, App., Rule 23.

3. *Whitener,* 773 P.2d at 1249 n. 1.

4. *Id.*

objected to as lacking in probative value, the issue is whether it is probative of the elements it seeks to establish once admitted.[5] Thus, an objection to the "competence" of medical evidence has a separate and distinct meaning from a probative value objection. Medical evidence may be "competent" in the sense that it was correctly admitted and yet lack the required quality of legally sufficient proof.[6]

■ However, in *Parks v. Norman Municipal Hospital,*[7] this Court adopted the any-*competent* evidence standard of review for decisions of the Workers' Compensation Court.[8] By force of 85 O.S. 1981, § 26,[9] all findings of fact made in the trial court's decision under review are conclusive and binding unless it is ascertained that such findings lack support by any competent evidence.[10] Clearly, if the only evidence which supports an order of the trial court lacks probative value the *Parks* test will not be met. In other words, when appellate review is premised on a probative value objection, an appellate court can hold that the trial court's order is not supported by any competent evidence under the *Parks* test because the supporting evidence lacks probative value.[11] Thus, the term "competency" when used as an objection refers to the evidence's legal admissibility, while the term "competent" as used in the *Parks* test refers to the legal sufficiency, on any ground of evidence which supports

an order of the Workers' Compensation Court.

As a result, the Court of Appeals had the power to declare that Dr. Shook's testimony lacked probative value, and that therefore, the order of the trial court was not supported by the competent evidence under the *Parks* standard. However, in compliance with the principles stated in *Whitener*, the admissibility or "competence" of the evidence was not before the Court of Appeals because upon claimant's failure to object timely, the report stood admitted by force of Rule 21 of the Rules of the Workers' Compensation Court.[12]

## II.

■ In this case, the Court of Appeals carefully examined the testimony of Dr. Shook and weighed it against other evidence finding the basis of the physician's conclusion considerably flawed. As discussed above, we held in *Parks v. Norman Municipal Hospital,*[13] that the standard to be applied by this Court, and the Court of Appeals, in reviewing a decision of the Workers' Compensation Court is the any-competent evidence standard.[14] Under this standard, the reviewing court's responsibility is simply to canvass the facts, not to weigh conflicting proof in order to determine where the preponderance lies, but only for the purpose of ascertaining wheth-

5. *Id.*

6. *LeBarge v. Zebco,* 769 P.2d 125, 130 (Okl.1988) (Opala, J., dissenting in part, concurring in part).

7. 684 P.2d 548 (Okl.1984).

8. *Id.* at 549, 552. *See also Merrill v. State Industrial Comm'n.,* 290 P.2d 1095, 1098 (Okl.1955); *Matter of Death of Lewis,* 671 P.2d 1162, 1163 (Okl.1983); *Loggins v. Wetumka General Hospital,* 587 P.2d 455, 457 (Okl.1978); *Wilkinson v. McGehee,* 651 P.2d 671 (Okl.1982); *Graves v. Safeway Stores, Inc.,* 653 P.2d 1236, 1238 (Okl. 1982); *Thomas v. Keith Hensel Optical Labs,* 653 P.2d 201, 203 (Okl.1982).

9. That section provides in pertinent part: " * * * The decision of the commission shall be final as to all questions of fact and except as provided in ... [§ 29], of this Article, as to all questions of law." 85 O.S.1981, § 26.

10. *Parks,* 684 P.2d at 552; *Merrill v. State Industrial Comm'n., supra* at 1098, note 7.

11. *See, e.g., Whitener v. South Central Solid Waste Authority,* 773 P.2d 1248 (Okl.1989); *Gaines v. Sun Refinery and Marketing,* 790 P.2d 1073 (Okl.1990).

12. *See supra,* note 2.

13. 684 P.2d 548 (Okl.1984).

14. *Id.* at 549, 552. *See also, Merrill v. State Industrial Comm'n.,* 290 P.2d 1095, 1098 (Okl. 1955); *Matter of Death of Lewis,* 671 P.2d 1162, 1163 (Okl.1983); *Loggins v. Wetumka General Hospital,* 587 P.2d 455, 457 (Okl.1978); *Wilkinson v. McGehee,* 651 P.2d 671 (Okl.1982); *Graves v. Safeway Stores, Inc.,* 653 P.2d 1236, 1238 (Okl.1982); *Thomas v. Keith Hensel Optical Labs,* 653 P.2d 201, 203 (Okl.1982).

er the decision is supported by competent evidence.[15]

As part of its review, the Court of Appeals examined some of claimant's medical evidence when determining whether the trial court's order was supported by competent evidence. This balancing of the evidence went beyond the proper scope of review and in doing so the Court of Appeals invaded the fact-finding province of the trial court.[16] However, if the result of the Court of Appeals' judgment is otherwise correct, it will. not be disturbed on certiorari if there are other grounds to support its decision.[17] Thus, we must determine whether the trial court's decision is or is not supported by competent evidence.

■ Claimant advances two principal arguments against employer's medical evidence. First, claimant argues that the evidence is flawed because there is not a statement in the evidence on the issue of whether claimant ever sustained an accidental injury, and that therefore, there is no evidence in the record showing that claimant has not suffered an accidental injury arising out of and in the course of his employment. Claimant argues that the omission renders Dr. Shook's report in violation of Rule 20. We held in *Perlinger v. J.C. Rogers Constr. Co.,*[18] *LeBarge v. Zebco,*[19] and *Whitener,*[20] that evidence which is

not in substantial compliance with Rule 20 is not competent evidence upon which the trial court may base its conclusion.

The pertinent part of Rule 20, to which claimant refers, provides: "The Court ... encourages the production of medical evidence by verified or declared report which shall contain the following, *where applicable:* * * * (d) The date and cause of the alleged injury and whether, in the physician's opinion, it is job-related." [emphasis added][21] The inclusion of the language "where applicable" in the statute indicates legislative intent that the terms of the statute need not be strictly applied where such application is not appropriate.

This case provides an example of the type of situation contemplated by the provision. Here, Dr. Shook found that the claimant was suffering from "perennial asthma" which was not caused by his job with employer. Perennial asthma is not the type of impairment which can necessarily be attributed to a specific date and at least in the claimant's case in Dr. Shook's opinion, a specific cause. It is an example of a set of facts where it is not appropriate to require strict compliance with the terms of Rule 20(d) as contemplated by the "where applicable" language of the provision.[22] Where the injury, or impairment, is not of a type where its date and cause can

---

15. *Parks,* at 552; *Loggins v. Wetumka General Hospital, supra,* note 2; *Matter of Death of Sade,* 649 P.2d 538, 540 (Okl.1982); *Matter of Death of Takagi,* 662 P.2d 308 (Okl.1983); *Wilkinson v. McGehee,* 651 P.2d 671 (Okl.1982); *Matter of Death of May,* 586 P.2d 738 (Okl.1978); *Chromalloy–American, Oklahoma Division v. Wright,* 567 P.2d 71 (Okl.1977); *Sooner Const. Co. v. Brown,* 544 P.2d 500 (Okl.1975).

16. *Breckenridge v. Bray Lines,* 782 P.2d 909, 910 (Okl.1989); *Mitchell v. Lepak Trucking Co.,* 561 P.2d 967 (Okl.1977).

17. A correct judgment will not be disturbed on appeal, even if the court below applied incorrect theory or reasoning in arriving at its conclusion. *Fowler v. Bailey,* 61 OBJ 2516, —— P.2d —— (Okl.1990); *Matter of Estate of Bartlett,* 680 P.2d 369 (Okl.1984); *Atlantic Richfield Co. v. State ex rel. Wildlife Conservation Comm'n. In and For State,* 659 P.2d 930 (Okl.1983); *Carpenter v. Carpenter,* 645 P.2d 476 (Okl.1982); *Russell v. Flanagan,* 544 P.2d 510 (Okl.1975). *See also* 12 O.S.1981, § 78 which provides: "The court, in every stage of action, must disregard any error

or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect."

18. 753 P.2d 905,.907 (Okl.1988).

19. 769 P.2d 125, 127 (Okl.1988).

20. *Supra,* 773 P.2d at 1251.

21. 85 O.S.Supp.1987, Ch. 4, App., Rule 20.

22. The amendments to Rule 20, although not applicable to this case, changed the language in the old Rule 20 which stated that the report "shall contain the following, where applicable:" to the following: "The Court encourages but does not require the report to include the following information: ... 4. The date and cause of the alleged injury and whether, in the physician's opinion, it is job-related." 85 O.S.Supp. 1990, Ch. 4, App., Rule 20(B).

be ascertained with certainty (e.g. a head injury resulting from a dropped brick), it is enough that Dr. Shook expressed a medical opinion that the asthma was not caused by the chemical exposure involved in claimant's job and complied with the remaining requirements of Rule 20. Therefore, we reject claimant's argument.

■ Second, claimant argues, and the Court of Appeals agreed, that employer's medical evidence is flawed because Dr. Shook stated that he had reviewed the records made by several other physicians and that only Dr. Miller had related claimant's impairment to his work. Claimant introduced a letter written by another of the claimant's physicians as rebuttal evidence which stated that claimant's condition could have been aggravated by exposure to the chemicals in claimant's workplace.

There are two reasons why this argument must fail. First, it appears from the record that the letter was not included in the medical records reviewed by Dr. Shook at the time he examined claimant, and was not produced until its introduction at trial. Neither Dr. Shook, nor employer, can be held responsible for medical records not made available to them. Additionally, even if Dr. Shook's statement as to the contents

of the other medical records was not completely accurate, the medical evidence produced by him would not necessarily be flawed as a result. Absent evidence that Dr. Shook materially relied on the contents of the other medical report in reaching his conclusion, the misstatement would question only the credibility of Dr. Shook's testimony which is to be judged solely by the trial court.[23] It is clear from the evidence that the conclusion reached by Dr. Shook was based on examination of the claimant and the history provided by claimant, and not on the reports of other physicians. This is evidenced by the fact that Dr. Shook was aware of another physician's report which also tied claimant's condition to his work which he ignored.

### III.

■ The Court of Appeals addressed the issue of whether Employer's medical evidence complied with the American Medical Association's "Guides to the Evaluation of Permanent Impairment" ("A.M.A. Guides"). An evaluation of permanent impairment for workers' compensation purposes generally must be made by applying the standards prescribed in the A.M.A. Guides,[24] and deviations from the statutori-

---

**23.** *Pearl v. Associated Milk Producers, Inc.,* 581 P.2d 894, 896 (Okl.1978).

**24.** 85 O.S.Supp.1987, Ch. 4, App., Rule 20 (amended 1990), provides in pertinent part: "The Court ... encourages the production of medical evidence by verified or declared report which shall contain the following, where applicable: * * * (1) Any other detailed factors upon which the physician's evaluation of permanent impairment is based, *including a statement that the evaluation is in substantial accordance with the latest 'Guides to the Evaluation of Permanent Impairment' adopted and published by the American Medical Association which were in effect when the examination was made.*

85 O.S.Supp.1987, § 3(11) (amended 1990) provides: "As used in the Workers' Compensation Act: * * * (11) 'Permanent impairment' means any anatomical or functional abnormality or loss after reasonable medical treatment has been achieved, which abnormality or loss the physician considers to be capable of being evaluated at the time the rating is made. *Except as otherwise provided herein, any examining physician shall only evaluate impairment in accordance with the latest 'Guides to the Evaluation of Permanent Impairment' adopted and*

published by the American Medical Association. *The examining physician shall not deviate from said guides except as may be specifically provided for in the guides. These officially adopted guides shall be the exclusive basis for testimony and conclusions with regard to permanent impairment* with the exception of paragraph 3 of Section 22 of this title, relating to scheduled member injury or loss; and impairment, including pain or loss of strength, may be awarded with respect to those injuries or areas of the body not specifically covered by said guides." [emphasis added] *id.*

Note that 1990 amendments are not applicable because their effective date is after the trial of this case, but that such amendments do not alter the basic rule of § 3(11). *See* 85 O.S.Supp. 1990, § 3(11).

In addition, a recently enacted rule, which does not apply to this case because the case came to trial before its enactment, is 85 O.S.Supp.1990, Ch. 4, App., Rule 21 which provides in relevant part: "Except as otherwise provided in Rule 32 and 33, *a physician's evaluation of the extent of permanent impairment shall be prepared in substantial compliance with the A.M.A. Guides to the Evaluation of Permanent Impairment.* * * * [emphasis added].

ly mandated regime are not permissible without an adequate medical explanation.[25] Medical evidence which is based on an evaluation not performed in compliance with the A.M.A. Guides, with no adequate explanation, violates the mandates of Workers' Compensation Rule 20 and 85 O.S.Supp. 1987, § 3(11) and thus, is not competent evidence upon which the trial court may base its conclusion.[26]

Dr. Shook's deposition testimony and letter, as well as the examination upon which that evidence is based, are required to be in substantial compliance with the A.M.A. Guides and any deviations must be adequately explained in order for the trial court's decision to stand. This is so because it was the only medical evidence offered by employer which could support a judgment in its favor since it provided its defense that claimant's impairment was not job-related.

Based on past precedent of this Court, claimant's objection would be sufficient to preserve the issue of whether Dr. Shook's testimony and underlying examination of claimant were in compliance with the A.M.A. Guides for appeal as the finding goes to the probative value of the evidence.[27] As discussed below,[28] we overruled this precedent in the recent case of *Gaines v. Sun Refinery and Marketing.*[29] However, the rule announced in that case does not apply to the instant case as it was tried before the mandate was issued in *Gaines.*[30]

■ The Court of Appeals found a deviation from the Guides because Dr. Shook stated that he did not know whether the predicted values used by his computerized equipment for performing spirometric evaluations were identical to those taken from the A.M.A. Guides and acknowledged that he had taken the predicted values from the computer. Dr. Shook stated in his deposition that he was "sure they must be in conformance with A.M.A. guidelines" but that he did not know if the values were identical. The statement that the predicted values used by the computer were in conformity with the A.M.A. Guides was not questioned by claimant. More importantly, no actual deviation from the Guides was ever claimed by claimant or is shown by the record. Therefore, the statement that the predicted values used by the computer are in conformity with the Guides stands uncontroverted, and there is no basis for finding a deviation from the Guides.

■ The Court of Appeals also found non-compliance with the A.M.A. Guides because Dr. Shook erroneously stated that "basically the nose and sinuses," or "above the mouth level" constituted the upper respiratory system. According to the A.M.A. Guides, the upper respiratory system consists of the air passages, which include "the nares, nasal cavities, mouth, pharynx, larynx, trachea and bronchi." While it cannot be disputed that Dr. Shook's statement is not consistent with the A.M.A. Guide definition, the error does not invalidate the report. At his disposition, Dr. Shook explained his reasoning as follows:

> Well, of course, you have to understand that attorneys want to separate the body a little bit more carefully than we do.

**25.** *Wheat v. Heritage Manor,* 784 P.2d 74, 77 (Okl.1989).

**26.** *Gaines v. Sun Refinery and Marketing,* 790 P.2d 1073, 1077 (Okl.1990); *LaBarge v. Zebco,* 769 P.2d 125, 127 (Okl.1988); *Perlinger v. J.C. Rogers Constr. Co.,* 753 P.2d 905, 907 (Okl.1988). The above-cited cases specifically held that evidence which is not in substantial compliance with Rule 20 is not competent evidence. *Id.* The relevant portion of Rule 20 is simply the implementing provision of Rule 21 and § 3(11) with respect to *written* medical reports. Thus, the holdings apply equally to medical evidence in the form of declared medical reports, as in the instant case, except that the supporting statutory provisions are Rule 21 and § 3(11) instead of Rule 20.

**27.** *See, e.g., Whitener v. South Central Solid Waste Authority,* 773 P.2d 1248 (Okl.1989); *Gaines v. Sun Refinery and Marketing,* 790 P.2d 1073 (Okl.1990).

**28.** *Infra* notes 32–36 and accompanying text.

**29.** 790 P.2d 1073 (Okl.1990).

**30.** *Id.* at 1080.

But the impairment is really in the lower portion of his respiratory tree. Even though the upper portion is also allergic, it's not impaired because—The function of the upper respiratory system is to warm and humidify air going past it. And he does that very well. He does not have any problem with either warming or humidifying the air. His problem is in spasm of the bronchiole, which is the lower portion of the respiratory system.

Dr. Shook also explained that his twenty-percent impairment rating encompassed all of the disability claimant has to his entire respiratory system, regardless of how one defines the upper versus the lower system. This testimony provides an adequate medical explanation for Dr. Shook's deviation from the definition of upper respiratory system under the Guides. Therefore, the deviation does not render the evidence incompetent for non-compliance with the Guides.[31]

 This Court recently addressed the trend of appellate courts being called upon to review medical reports in workers' compensation cases for alleged non-compliance with the A.M.A. Guides in *Gaines v. Sun Refinery and Marketing.*[32] In that case, we announced a new rule for preservation of claims for alleged non-compliance with the A.M.A. Guides to be prospectively applied to cases tried after the mandate was issued in that case which was April 3, 1990.[33] Because this case was tried before that date, the new rule does not apply. However, because this case contains the same problem as was addressed in *Gaines,* we quote the relevant portion of that case for guidance. In *Gaines,* we stated:

In this case, as with most others recently reviewed by us, the grounds given at trial for objections have been general, not specific. As a practical matter the *appellate* courts are being employed to be courts of first review as to whether A.M.A. guidelines are met. Such is not the function of appellate courts. Trial courts are not traditionally reversed for error unless the error was called to their attention at a time when they themselves could reasonably be expected to correct it....

Henceforth the appellate courts of this state will not reverse for failure to follow Rule 20 or the A.M.A. Guidelines unless an objection is made in compliance with Rule 21 that also states the *specific grounds* under § 2104.[34] The objection may be either for lack of competency or lack of probative value, but an objection with a mere reference to lack of A.M.A. Guidelines will not suffice for specificity. A party must state the specific provision of Rule 20 and/or the A.M.A. Guidelines which is the basis of the objection. For example, if a party would ask this Court to reject a report for failure to administer the single breath Dco test, he must have initially asked the trial court to reject the report for the doctor's failure to have administered that particular test. If he would ask this Court to disqualify a report for inadequate history in that the claimant's history of exposure to other toxic chemicals was not included, he must first have made that substantially identical request to the trial court. We will make like requirements with respect to alleged errors in computations, uses or ratios, percentages of disability, and so forth.[35] Absent objections to medical reports made with such specificity the appellate courts hereafter will rely on a

---

**31.** *Wheat v. Heritage Manor,* 784 P.2d 74, 77 (Okl.1989).

**32.** 790 P.2d 1073 (Okl.1990).

**33.** *Id.* at 1080.

**34.** 12 O.S.1981, § 2104 provides: "Error may not be predicated on a ruling which admits or excludes evidence unless ... a timely objection or motion to strike appears of record, *stating*

*the specific ground of objection,* if the specific ground was not apparent from the context.... [emphasis added]

**35.** The trial court must rule on the objection prior to any award being entered or denied. Any trial court finding a report to be so flawed should then afford the offering party additional time, if requested, to furnish a corrected report.

reporting physician's Rule 20–required assertion that his report substantially complies with A.M.A. Guidelines, and appealing parties in Compensation Court cases will not be heard to advance arguments thereon at this level that were not expressed at the trial of the case.[36] [emphasis supplied] [citations omitted].

The *Gaines* rule is applicable to cases tried after April 3, 1990, the date mandate was issued in that case.

### IV.

The trial court found that claimant had not sustained an injury arising out of and in the course of his employment, and denied his claim for compensation. The trial court's finding is a finding of fact which is binding upon this Court if supported by any competent evidence.[37] We hold that employer's medical evidence is competent and supports the trial court's decision. As a result, we VACATE the opinion of the Court of Appeals and the order of the Workers' Compensation Court denying claimant's claim is hereby REINSTATED and SUSTAINED.

OPALA, C.J., and LAVENDER, SIMMS, HARGRAVE SUMMERS, JJ., concur.

HODGES, V.C.J., and KAUGER, J., concur in result.

ALMA WILSON, J., dissents.

---

**36.** *Gaines,* 790 P.2d at 1080.

**37.** *Parks v. Norman Municipal Hospital,* 684 P.2d 548 (Okl.1984). *See also* cases cited *supra* note 14.