2011 OK CIV APP 80

**Robert SILL, Petitioner,**

v.

**HYDROHOIST INTERNATIONAL,** Continental Casualty Insurance Co., and the Workers' Compensation Court, Respondents.

No. 108,377.

Court of Civil Appeals of Oklahoma, Division No. 2.

April 8, 2011.

Certiorari Denied June 13, 2011.

Pamla K. Cornett, Flynn Law Firm, Tulsa, Oklahoma, for Petitioner.

J.R. Schneider, Pierce Couch Hendrickson Baysinger & Green, L.L.P., Oklahoma City, Oklahoma, for Respondents Hydrohoist International and Continental Casualty Insurance Co.

DEBORAH B. BARNES, Presiding Judge.

¶ 1 Petitioner Robert Sill (Claimant) appeals the trial court's order filed on May 12, 2010, denying his compensation claim for a cumulative trauma injury to his back. The trial court, in a previous order filed on September 5, 2007, awarded Claimant compensation for an on-the-job injury to his "LOW BACK" that occurred on June 27, 2005. One dispositive issue is presented: whether Claimant's subsequent compensation claim following the September 5, 2007, order is barred by the doctrine of claim preclusion. Based upon our review of the facts and law, we find that it is barred by claim preclusion. Therefore, we sustain the trial court's May 12, 2010, order.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 On September 5, 2007, the trial court's "Order Determining Compensability and Awarding Permanent Partial Disability Benefits" was filed.[1] The only injury asserted by Claimant was "a single event injury of June 27, 2005...."[2] In the September 5, 2007, order, the trial court awarded Claimant compensation for this injury to his "LOW BACK...." The order states that "as a result of said injury, claimant sustained 24 percent permanent partial disability to the LUMBAR BACK ... (**over and above prior 10%**) ...." The "**prior 10%**" refers to pre-existing unrelated impairments to Claimant's back that were not caused by the June 27, 2005, event. This finding is known as a "Crumby finding."[3]

¶ 3 A few weeks later, on October 1, 2007, Claimant filed a Form 3 alleging a cumulative injury to his back with a date of last exposure on October 22, 2006.[4] The nature of the injury was described as "surgery 2000." As subsequently revealed in the trial court, Claimant was attempting to obtain compensation for the "**prior 10%**" Crumby finding set forth in the September 5, 2007,

---

1. Record (R.), p. 94.

2. R., p. 76.

3. A "Crumby finding" takes its name from *J.C. Penney Co. v. Crumby*, 1978 OK 80, 584 P.2d 1325, and refers to a rated assessment by the Workers' Compensation Court of the amount of pre-existing unrelated impairments (e.g., to the same body part) suffered by a claimant at the time of the work-related injury and the extent to which those unrelated impairments contribute to the claimant's injury and current condition.

*Hammons v. Oklahoma Fixture Co.*, 2003 OK 7, 64 P.3d 1108, 1110 n. 11. The rated assessment by the Workers' Compensation Court of the effect, if any, upon a claimant's condition from unrelated pre-existing impairments, "[t]hat element of the evaluation process is known in the language of the compensation bar as a *Crumby finding*." *Hammons* at ¶ 5, 64 P.3d at 1110 (footnote omitted).

4. R., p. 3.

order. Respondents Hydrohoist International and Continental Casualty Insurance Co. (collectively, Employer) denied compensability.

¶ 4 In an order filed on August 6, 2009, the trial court denied Claimant's cumulative trauma claim on the grounds of "res judicata" and "law of the case. . . ."[5] This order was appealed by Claimant to a three-judge panel in a "Request for Review" filed on August 18, 2009. Claimant stated in this request that:

> [the trial court] ignored the fact that [Claimant] had a long period of repetitive work and that the 10% crumby finding was in fact the obvious and same 10% recognized but not awarded by the court on the subsequent injury. Claimant claims no injury after the subsequent injury but is entitled to be compensated for the injury from the cumulative trauma for his many years of injuries work (sic) with the company as set at 10% by the judge on the subsequent injury.[6]

¶ 5 The three-judge panel vacated the trial court's August 6, 2009, order and remanded the case to the trial court for further proceedings. The only explanation provided by the three-judge panel was that the order "was contrary to law AND against the clear weight of the evidence" and "[n]o record was made."[7]

¶ 6 On remand, the trial court, in an order filed on December 23, 2009, dismissed all respondents except Employer.[8] All other issues were reserved for a future hearing. This order was not appealed.

¶ 7 Trial was held on May 5, 2010. At trial, Claimant's counsel stated:

> we're here for an award of PPD in the amount of ten percent . . . . for preexisting back problems. We are alleging today that that ten percent preexisting was also as a result of his employment at Hydrohoist and that he is entitled to file a claim for that ten percent and be awarded (sic),

as he has not ever received an award for those injuries.[9]

¶ 8 In its order filed on May 12, 2010, the trial court denied Claimant's compensation claim for the **"prior 10%"** set forth in the September 5, 2007, order. The May 12, 2010, order states in part:

—1—

> this hearing is in regard to a finding in . . . [the] order dated SEPTEMBER 5, 2007, which set out that claimant was awarded 24% to his LUMBAR BACK over and above a prior 10%. The 10% award was based on a lumbar back job injury in 2000, and resulting surgery.

· · ·

—3—

> THAT on OCTOBER 1, 2007, the claimant subsequently filed a cumulative trauma claim alleging that the 10% pre-existing may be awarded as cumulative trauma and be assessed as additional permanent partial disability. . . .

· · ·

—7—

> THAT the only argument which claimant may advance at this time regarding an injury in 2000, is the creative argument that a "crumby" finding of 10%, related to the 2000 injury, in the SEPTEMBER 5, 2007 order, somehow created a new cause of action for cumulative trauma in 2006. Without regard to whether the cumulative trauma claim was filed within 2 years of leaving employment on OCTOBER 22, 2006, no new injury exists which was not the subject of the order issued on SEPTEMBER 5, 2007. Said order is the law of the case.

—8—

> THAT the claim for cumulative trauma as a result of injury and surgery in the year 2000 is barred for failure to timely file a claim following the injury.

—9—

---

5. R., p. 41.

6. R., p. 43.

7. R., p. 50.

8. R., p. 53. There were eight other insurance companies dismissed.

9. May 5, 2010, Transcript (Tr.), pp. 3–4.

THAT claimant offers no authority that a Crumby finding may be advanced for permanent partial disability consideration except as said findings are part of a calculation in determining whether claimant has suffered permanent total disability.

—10—

THAT claim for cumulative trauma based on the order dated SEPTEMBER 5, 2007 ... based on a 10% pre-existing disability from the year 2000 is DENIED.

¶ 9 From this order denying his claim, Claimant appeals.

## STANDARD OF REVIEW

■■■ ¶ 10 One dispositive issue is presented on appeal: whether Claimant's compensation claim is barred by the doctrine of claim preclusion.[10] Whether the doctrine of claim preclusion applies "is usually a mixed question of law and fact." *Barker v. State Insurance Fund*, 2001 OK 94, ¶ 6, 40 P.3d 463, 466. Here, because the underlying facts relevant to our determination are not disputed, the question is solely one of law. *See id.* When confronted with issues of law on appeal from the Workers' Compensation Court, this Court exercises *de novo* review. *American Airlines v. Hervey*, 2001 OK 74, ¶ 11, 33 P.3d

47, 50. Pursuant to this standard of review, we have plenary, independent and non-deferential authority to determine whether the lower court erred in its legal rulings. *Id.*

## ANALYSIS

■■■ ¶ 11 Claimant raises two propositions of error on review. First, Claimant argues the trial court erred in determining his claim was time barred. Second, he claims the trial court erred in denying benefits as a matter of law. Because we find the trial court correctly denied Claimant's benefits as a matter of law pursuant to the doctrine of claim preclusion, we need not, and do not, address Claimant's argument regarding statute of limitations.

■■■ ¶ 12 The doctrine of claim preclusion (formerly known as res judicata) operates to bar relitigation by the parties or their privies of issues which either were *or could have been* litigated in a prior action which resulted in a final judgment on the merits. *In the Matter of the Estate of Sneed*, 1998 OK 8, ¶ 13, 953 P.2d 1111, 1116.[11] Pursuant to the doctrine of claim preclusion "a final judgment on the merits of an action precludes the parties from relitigating not only the adjudicated claim but also any theories or

---

10. The trial court, in its May 12, 2010, order, based its decision in part on the settled law of the case. However, this Court is not bound by the reasoning of the trial court, and if that court reaches the correct result we may affirm if there is a different but proper legal theory upon which to base the decision. *McMinn v. City of Oklahoma City*, 1997 OK 154, ¶ 11, 952 P.2d 517, 521. We note, however, that the trial court may have intended to utilize claim preclusion. That is, in the trial court's previous order filed on August 6, 2009, it appeared to use the two doctrines interchangeably (the August 6, 2009, order finds that Claimant's claim "is res judicata. The law of the case controls. . . .").

> The settled law of the case operates to bar relitigation of only those issues that have been settled by an appellate opinion. An issue raised, but not reached by the reviewing court, does not fall within the purview of this rule. **The doctrine is distinguishable from [claim preclusion].** Although both doctrines are founded on a public policy against reopening that which has previously been decided, **[claim preclusion] is broader in scope.** It operates to bar all theories and all issues of fact or law

which were litigated or which could have been litigated.

*Mobbs v. City of Lehigh*, 1982 OK 149, ¶ 6 n. 5, 655 P.2d 547, 549 n. 5 (citations omitted, emphasis added). Here, there was no previous appellate opinion which could have provided a "law of the case."

11. Res judicata is often used imprecisely to denote two separate and distinct doctrines, known as res judicata (now called claim preclusion) and collateral estoppel (now called issue preclusion). *Miller v. Miller*, 1998 OK 24, ¶ 22, 956 P.2d 887, 896. "These two doctrines are often used interchangeably because they are closely related and both promote the same general public policy concerns." *Id.* Pursuant to the doctrine of issue preclusion, once a court has decided an issue of fact or of law necessary to its judgment, the same parties or their privies may not relitigate that issue in a suit brought upon a different claim. *Id.* at ¶ 25. Pursuant to the doctrine of claim preclusion, a final judgment on the merits of an action precludes the parties from relitigating not only the adjudicated claim, but also any theories or issues that were actually decided, or could have been decided, in that action. *Id.* at ¶ 23.

issues that were actually decided, or could have been decided, in that action." *National Diversified Business Services, Inc. v. Corporate Financial Opportunities, Inc.*, 1997 OK 36, ¶ 12, 946 P.2d 662, 667 (footnote and emphasis omitted).

¶ 13 "Generally, every injury from a cumulative trauma which is known to a Claimant, and which accrues on the same date, is deemed to be 'at issue' when the issue of permanent disability is tried." *Sooner State Optical, Inc. v. Blackburn*, 2006 OK CIV APP 98, ¶ 11, 141 P.3d 577, 581 (citation omitted).

> [Claim preclusion] ... bars relitigation of a claim that was or could have been litigated in a previous proceeding. A compensable change in condition [however] "may be established when a pathology, not fully ascertainable before in terms of its relation to, and effect upon, compensable disability, is shown to have manifested its presence and become detectable through a process of progressive developments occurring subsequent to the last prior order or award." *Wade Lahar Constr. Co. v. Howell*, 1962 OK 237, ¶ 9, 376 P.2d 221, 224.

*Sooner State Optical, Inc.* at ¶ 12, 141 P.3d at 581.

¶ 14 Therefore, although an injury that could not have been litigated in a previous proceeding—i.e., an "after-manifested condition" that develops subsequent to the last prior order or award—may afford a tenable legal basis for additional relief,[12] the cumulative trauma injury to Claimant's back for which Claimant now seeks compensation *could* have been litigated in the prior proceedings that resulted in the previous order filed on September 5, 2007.

¶ 15 Instead, the record demonstrates that Claimant filed a Form 3 on October 1, 2007, in an attempt to obtain compensation for the 10% Crumby finding (i.e., the pre-existing unrelated impairment finding of "**prior 10%**") set forth in the September 5, 2007, order. This claim does not include any injury or progressive developments *after* the June 27, 2005, on-the-job injury and the initiation of the proceedings that resulted in Claimant's compensation award in the September 5, 2007, order.

¶ 16 Although Claimant asserts on appeal that "[h]is problems began in 2000 and were aggravated by his job duties until his employment was terminated in 2006,"[13] this is inconsistent with his position in the proceedings below. For example, although Claimant stated below in his Form 3 filed on October 1, 2007, that his date of last exposure was October 22, 2006, he later stated that he "claims *no injury after the subsequent injury* [i.e., after the June 27, 2005, injury] but is entitled to be compensated for the injury from the cumulative trauma for his many years of injuries work (sic) with the company as set at 10% by the judge on the subsequent injury."[14] Claimant stated at trial:

> we're here for an award of PPD in the amount of ten percent .... *for preexisting back problems.* We are alleging today that *that ten percent preexisting* [i.e., the Crumby finding in the September 5, 2007, order] was also as a result of his employment at Hydrohoist and that he is entitled to file a claim for that ten percent and be awarded (sic), as he has not ever received an award for those injuries.[15]

This is reflected in ¶ 7 of the trial court's order filed on May 12, 2010, including the finding that "no new injury exists which was not the subject of the order issued on SEPTEMBER 5, 2007."

---

**12.** *See Benning v. Pennwell Publishing Co.*, 1994 OK 113, ¶ 11, 885 P.2d 652, 656 (when an after-manifested condition is shown to the tribunal's satisfaction to be medically related to an on-the-job injury and increases disability or triggers recurrence of the healing period, it affords a tenable legal basis for additional relief); *Tinsley v. Goldenstern and Stolpher*, 1960 OK 143, ¶ 4, 353 P.2d 6, 8 (a claimant is entitled to recover for the worsened condition of an injury or body part which is expressly the subject of a previously adjudicated disability).

**13.** Claimant's Brief–in–Chief, p. 8.

**14.** R., p. 43 (emphasis added).

**15.** Tr., pp. 3–4 (emphasis added).

¶ 17 Claimant's position in the trial court was that he was seeking compensation for injuries that existed *prior* to the June 27, 2005, injury, and that were described as the "**prior 10%**" in the previous order. Regardless of the date of Claimant's last day of employment (October 22, 2006), Claimant only requested compensation in the trial court for injuries that *pre-existed* the June 27, 2005, on-the-job injury. The doctrine of judicial estoppel "provides that a party who has knowingly assumed a particular position dealing with matters of fact is estopped from assuming an inconsistent position to the detriment of the adverse party." *Bank of the Wichitas v. Ledford,* 2006 OK 73, ¶ 23, 151 P.3d 103, 112 (footnote omitted). The purpose of judicial estoppel "is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Id.* (footnotes and internal quotation marks omitted). "The doctrine applies only to prevent a party from advancing a position inconsistent with a court's determination of a matter of fact made by the court on the basis of that party's assertions." *Id.* (footnote omitted).

¶ 18 We find that judicial estoppel applies to prevent Claimant from assuming an inconsistent position on appeal regarding the nature of his cumulative trauma injury because the trial court's determinations, including its determination that "no new injury exists which was not the subject of the order issued on SEPTEMBER 5, 2007," were made on the basis of Claimant's assertions in the proceedings below and at the trial held on May 5, 2010. To find otherwise would be detrimental to Employer.

¶ 19 Therefore, Claimant's compensation claim is for an injury that accrued *before* June 27, 2005, and that could have been litigated in the previous proceedings. Recently, in *Oklahoma Natural Gas, Inc. v. Messer,* 2011 OK CIV APP 20, 249 P.3d 99, a separate division of this Court determined that a claim for "consequential psychological overlay" was not barred by claim preclusion because it involved injury that occurred *subsequent* to the trial court's previous order and that could not have been litigated in the

previous proceeding. *See also Sooner State Optical, Inc.* at ¶ 12, 141 P.3d at 581. Here, however, Claimant has again filed a workers' compensation claim seeking additional compensation for injury that occurred *prior* to the previous proceedings and that could have been litigated therein.

¶ 20 Because Claimant seeks compensation for an injury that accrued *prior* to the June 27, 2005, injury and the subsequent proceedings that resulted in the September 5, 2007, order, we find that his subsequent claim is barred by the doctrine of claim preclusion.

> Under the principle of claim preclusion, a final judgment on the merits of an action precludes the parties from relitigating not only the adjudicated claim, but also any theories or issues that were actually decided, or could have been decided, in that action. The doctrine of claim preclusion is designed to prevent piecemeal litigation through the splitting of a single claim into separate lawsuits.

*Miller v. Miller,* 1998 OK 24, ¶ 23, 956 P.2d 887, 896 (footnotes omitted). The purpose of claim preclusion is to prevent multiplicity of litigation over related claims. *McDaneld v. Lynn Hickey Dodge, Inc.,* 1999 OK 30, ¶ 8, 979 P.2d 252, 256. It is based largely on a policy of conserving judicial resources by avoiding needless relitigation of closely related issues. *Id.*

> Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.... As this Court and other courts have often recognized, res judicata ... relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication.

*Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) (cited by the Oklahoma Supreme Court in *National Diversified Business Services, Inc. v. Corporate Financial Opportunities, Inc.,* 1997 OK 36, 946 P.2d 662, at n. 20 and n. 24).

## CONCLUSION

¶ 21 For the reasons set forth above, we find that judicial estoppel prevents Claimant from assuming an inconsistent position on appeal, and Claimant's compensation claim, as presented to the trial court, is barred by the doctrine of claim preclusion. Therefore, we sustain the trial court's order filed on May 12, 2010.

¶ 22 **SUSTAINED.**

FISCHER, V.C.J., and WISEMAN, J., concur.